IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENIERIKA F. GREEN,

     Plaintiff,

v.                                    Civil Action No.: 1:21-cv-02061-APM

COSTCO WHOLESALE CORPORATION,

     Defendant.

## MEMORANDUM IN SUPPORT OF
## COSTCO WHOLESALE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Costco Wholesale Corporation ("Costco"), by counsel, and sets forth the following in support of its Motion for Summary Judgment:

## STATEMENT OF UNDISPUTED FACTS

This Motion relies upon Federal Rule of Civil Procedure 56(c)(1)(B), and Costco's showing that Green cannot produce admissible evidence to support her alleged claim. As such, material facts, while likely "contested" by Green, are not enough to establish a genuine issue for trial. The following uncontested facts are necessarily abridged as a result:

1.     On January 8th, 2019, Green was waiting in the checkout line at Costco. (ECF No. 1-2).

2.     The Costco in question is located at 2441 Market Street NE, Washington, DC 20018. (ECF No. 1-2).

3.     An employee with a case of water bottles made contact with Green. (ECF No. 1-2).

4.     The employee was carrying the water bottles on his shoulders and was not using a cart. (ECF No. 1-2).

## FACTUAL AND PROCEDURAL POSTURE

This case stems from allegations made concerning an incident at the Washington, D.C. Costco located at 2441 Market St NE, Washington, D.C.  Plaintiff Denierika Green ("Green") filed suit in the Superior Court for the District of Columbia on July 7, 2021, seeking $350,000 for injuries Green claims as a result of being bumped by a Costco employee carrying a case of water at the Washington, D.C. Costco.

On July 29, 2021, Costco timely filed a Notice of Removal to this Court.  (ECF No. 1). On September 10, 2021, this Court entered a Scheduling Order.  (ECF No. 10).  Pursuant to this Order, Green's Rule 26(a)(2) expert disclosures were due on or before January 15, 2022, and her rebuttal disclosures were due on or before March 1, 2022.  Green did not file expert disclosures of any kind in accordance with either of those deadlines.

Perhaps in light of Green's failure to make such disclosures, the Court ruled on April 6, 2022: "Plaintiff is reminded of her obligations to make the expert disclosures required by Federal Rule of Civil Procedure 26(a)(2), including any medical professionals who will provide opinion testimony." (Minute Order of April 6, 2022).  As this was already well after all deadlines had passed, this reminder was ostensibly given due to Green's status as a *pro se* litigant.

On June 6, 2022, Green was deposed.  In the course of her deposition, Green conceded no doctor has informed her she is suffering from a diminished capacity to work as a result of the alleged incident  (Denierika F. Green, Dep., Jun. 6, 2022, at 49:22-50:5) (excerpts attached as **Exhibit A)**, and further conceded her lost wages claim--fairly limited to 2019--is too speculative

to calculate (Green Dep. 50:19-51:5).  Green also stated the severity of the alleged impact was only such that she initially mistook it for a bird flying into her.[1]

Finally on June 8, 2022, over two months after this Court's Minute Order and nearly five months after Green's initial expert disclosure deadline, Green finally filed her "Expert Disclosures."  These disclosures were largely deficient, and were *wholly deficient* as to the issue of causation and the issue of Plaintiff's alleged Mild-Traumatic Brain Injury claim.  Exactly two experts are named: (1) Marilyn Kraus, MD, of the Traumatic Brain Injury Program and Concussion Clinic; and (2) Koji Ota, MD, Plaintiff's primary care doctor.

Dr. Kraus's "disclosure" states "she is no longer available for 'Expert Testimonies', however she could provide an 'Expert Report'.  Kraus's "designation" then states no further report would be needed (or presumably supplied at all), and merely refers to Green's medical records.  This is not an expert designation per Rule 26(a)(2), and in fact it appears that there will no be an expert to testify at trial regarding Green's concussion claim, as Dr. Kraus "is no longer available for 'Expert Testimonies.'"

Dr. Ota's disclosure is similarly deficient.  It provides "an Expert Report was requested April 14, 2022 [belatedly] and confirmed by WHC on April 15, 2022."  The disclosure concludes "Report request is still pending."  Dr. Ota is ostensibly a treating provider who is exempted from reporting requirements under Rule 26(a), *however*, Rule 26(a)(2)(C) requires the disclosure to state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  The "disclosure" does none of that, and is little more than the name of a doctor and a description of Green's failed efforts to obtain a report.

---

[1] "I was putting the groceries on the conveyor belt and I felt something strike the back of my head. And originally I thought it was a bird, I looked over and I said, honey, was that a bird, something hit me in the head." (Green, Dep. at 73:16-20).

Neither "disclosure" in the June 8, 2022 document complies with Rule 26(a)(2).  On the basis of this belated--legally moot--filing, assuming *arguendo* Green were even allowed to make her disclosures at such a late date, Green will not have any evidence of any concussion or cognitive issues or injuries resulting from the alleged incident, or any medical damages of any kind.  Green has no evidence of a causal relationship of *any* of her claimed injuries from the contact, and she lacks the requisite liability expert to establish Costco's standard of care.  Costco, by counsel, now moves for Summary Judgment on this basis.

## ARGUMENT

Federal Rule of Civil Procedure 56 entitles a party to move for summary judgment, which shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Such a Motion can be based upon a showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  Further, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Due to her failure to properly (or timely) disclose any expert to support her injury claim, Green is left without any admissible evidence to support her alleged injuries, medical bills, lost wages, or loss of earning capacity, nor is she able to establish liability or the standard of care.  She therefore is unable to present any evidence to support or dispute these material facts, and Costco is entitled to judgment as a matter of law on all of these issues.

I.    **Green's essential claim is that Costco failed to abide by safety standards.  Expert testimony is required to prove this claim, and as she has failed to disclose an expert, her claim fails.**

As Costco pled in its earlier 12(b)(6) Motion to Dismiss, Green's Complaint claims she was waiting at the checkout line when she was hit in the back of the head by a Costco employee who "was transporting the large case of water bottles on his shoulders rather than in a cart." Underlined twice at the bottom of the statement of facts in the Complaint is ostensibly Green's cause of action against Costco: "Exhibiting Extreme [sic] neglect of safety guidelines."

The Court ruled that it was required to construe the Complaint liberally due to Green's *pro se* status, and infer a cause of action for negligence.  In doing so, this Court opined that, "[a] company's internal safety guidelines or policies can constitute evidence of the degree of care required" and that "[h]ere, Plaintiff alleges that Defendant's employee struck her with a large case of water bottles carried on his shoulders rather than in a cart, '[e]xhibiting extreme neglect of safety guidelines.'"  The Court concluded, "[t]hat allegation suffices *at the pleadings stage* to make out a plausible claim for negligence." (Minute Order of April 6, 2022) (emphasis added). However, at the summary judgment stage, that allegation is simply not supported by any facts gleaned through discovery, nor is it supported by expert testimony as is required in this District.

In this District, "expert testimony is required to establish the standard of care in negligence cases that involve 'issues of safety . . . .'" *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. App. 2014) (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006)).  *See Wise v. United States*, 145 F. Supp. 3d 53, 62 (D.C. 2015) ("Because handrail installation is an issue of safety, it triggers the presumption that expert testimony is required to establish the standard of care."); *See also Frick v. AMTRAK*, 54 F. Supp. 3d 1, 4 (D.C. 2014) (noting in a case involving the claimed excessive speed of a train causing the plaintiff's injuries,

the safety standards applicable to the conductor clearly required an expert to establish the standard of care, and further noting experts have been required in myriad "safety" cases despite circumstances that "on first blush, appear to be within the realm of common knowledge") (quoting *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. 2007) (a listing of these myriad cases include "maintenance of leaning trees," "application of hair relaxer," "tightness of handcuffs," "cushioning for the ground underneath playground monkey bars," and the "maintenance of street lights to prevent falling light globes")).

Here, Green's allegation against Costco is, fundamentally, that they neglected their internal safety standards (or arguably, those of the industry at large), and this Court has previously held that *evidence* of safety standards could be used to support an inferred negligence claim. However, Green does not have the requisite evidence to support this claim. Even though "at first blush" the transportation of goods and merchandise through a retail establishment may appear to be within the realm of common knowledge, this District's prior rulings indicate otherwise. In fact, Costco's systematic transportation of chattels (both on a national scale and through each individual warehouse) in commerce and between the supply chain, the warehouse, and the customers, on a daily basis, *obviously* requires both industry standard and Costco-specific safety guidelines. It is *these guidelines* that Green claims Costco neglected, and it is *these guidelines* which this Court has previously ruled Green is entitled to present evidence of to support her negligence claim. *These guidelines* are the mechanism by which Green has pled her negligence claim. While this action has been deemed colorable as a negligence claim, the only allegation Costco has ever been placed on notice of is the allegation is that it somehow disregarded these "safety guidelines"--which Green has not disclosed or even attempted to define.

Just as in *Wise*, because the safety guidelines applicable to merchandise transportation in consumer retail establishments is an issue of safety, they "trigger[] the presumption that expert testimony is required to establish the standard of care." *Wise*, 145 F. Supp. at 62.  Green disclosed no such expert, and Green's Rule 26(a)(2) deadline has passed.  *In fact*, while there are fundamental deficiencies with the two experts "disclosed" in Green's June 8, 2022 disclosure, *Green has not even attempted to disclose an expert on the issue of Costco's liability or Costco's standard of care*.  This is a complete failure on Green's part to present evidence of her claim in accordance with this Court's Scheduling Order, and under Rule 37 she is barred from introducing this evidence at trial.

Moreover, Green *never issued discovery* to Costco to determine the nature of what these specific guidelines may have been, and how they may have been breached.  Plainly, she "cannot produce admissible evidence to support the fact" that Costco committed the breach she alleges, and therefore "cannot produce admissible evidence" to prove Costco's liability.  Under Rule 56, Costco is entitled to judgment as a matter of law.

## II.    Green's Rule 26(a)(2) Disclosures are Untimely and Deficient, and Experts are Required to Support her Alleged Injury Claims.  These Claims Therefore Fail for Lack of Evidence.

Irrespective of liability, Green also has not disclosed evidence to support her damages claim.  Again, "if the subject of the standard of care is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror, expert testimony is required in order for a plaintiff to meet this burden." *Night & Day Mgmt., LLC*, 101 A.3d at 1039 (internal citations omitted).  This District has previously opined on the difference between specific and general causation, both of which may require expert testimony if the science at issue

is beyond the knowledge of the average layperson.  *See Jones v. NVR Incorporation*, 2022 U.S.

Dist. LEXIS 57080 (D.C. 2022).  In *Jones*, this Court noted:

> Plaintiff has not offered evidence in support of either component of causation because she has failed to provide any expert testimony. As to general causation, the question of whether the mold that was found is 'toxic,' and the question of whether the so-called 'toxic' mold can cause the injuries that Plaintiff complains of requires scientific knowledge beyond knowledge of an average lay person. Plaintiff has offered no medical expert to opine on whether toxic mold can cause the injuries that Plaintiff alleges--including 'headaches, vomiting, bleeding, and chest pains during pregnancy with twins.' Plaintiff has also failed to offer sufficient evidence as to specific causation, which would require her to demonstrate that the so-called 'toxic' mold did cause the detrimental health issues she claims she and her children suffered. Again, Plaintiff did not timely disclose the identity of any medical expert (or otherwise timely comply with the requirements of Rule 26), and so she has been precluded from relying on expert testimony to demonstrate causation.

The same issues in *Jones* exist here.  The questions of (1) whether an "impact" of the

type and magnitude Green testified felt no greater than that of a bird flying into her head is

capable of causing the injuries she complains of; (2) whether an alleged concussion or mild

traumatic brain injury and its related symptomology can continue without substantial

improvement for the period of time Green alleges; and (3) whether the issues Green complains of

were actually caused by the alleged incident at Costco all require expert medical testimony.  Just

as in *Jones*, "Plaintiff did not timely disclose the identity of any medical expert (or otherwise

timely comply with the requirements of Rule 26)," and so she should be "precluded from relying

on expert testimony to demonstrate causation."

Without expert testimony, Green is unable to establish causation because these questions

all fall outside the scope of lay knowledge and expertise.  As she cannot establish causation,

Green "cannot produce admissible evidence to support the fact" that she was injured to the extent

alleged, if at all, and under Rule 56 Costco is entitled to judgment as a matter of law on that

issue.

III.     **Green Admits She Is Unable to Calculate Her Lost Wages Claim and Has No Causal Evidence of Lost Earning Capacity.**

In addition to Green's failure to disclose the requisite experts for her liability and damages claims, Green is specifically unable to maintain her claims for lost wages and loss of earning capacity.  Green was deposed on June 6, 2022.  During her deposition, Green testified she had no medical evidence to suggest a loss of earning capacity, that the only lost wages she could theoretically claim would have been sustained in 2019, and that the wages were so speculative that she was unable to calculate them with any specificity (Green Dep. at 50:19-51:5).

When asked, "Are you claiming lost income due to the events on January 8, 2019?" Green replied, "I am claiming lost capacity to work."  (Green, Dep. at 49:4-6).  On follow-up, Green was asked, "[A]re you claiming that you cannot work anymore as a result of the incident on January 8, 2019?" to which she replied, "As of right now I cannot." (Green Dep. at 49:7-10). Finally, Green was asked what support she had to substantiate this claim.  Specifically, Green was asked, "What medical doctor has told you that you are currently--or since January 8, 2019, unable to work as a result of the incident at Costco?"  Green replied that her doctors were waiting on her to complete therapy, but ultimately responded, "They have not stated that." (Green Dep. at 49:22-50:5).

Regarding her claim for lost wages, Green testified similarly.  She was asked, "[A]re you claiming that you missed out on any specific amount of money that would have been earned by you from January 8, 2019, until today?" Green responded that, because of COVID-19, "it would just be 2019." (Green Dep. at 50:11-18).  However, when asked to quantify this claim, she was unable to do so, stating "I can't tell you who would have—or how many times you would call me for a haircut or who would or what gigs, weddings, events, bridal showers.  I cannot give you

who would've called me during that time." (Green Dep. at 50:19-51:51).  When finally asked, "When we go to trial, do you intend or do you have some calculated figure for lost income that you intend to ask the court to award you?", Green responded, "Not at this time." (Green Dep. at 51:19-52:1).

As to Green's claim for diminished earning capacity, when "[c]onsidering the plaintiff's request for future lost wages, the court must evaluate whether he has proven the future consequences of the accident by a reasonable certainty." *Calva-Cerqueira v. United States*, 281 F. Supp. 2d 279, 298 (D.C. 2003).  Relatedly, Green admitted in deposition that she was self-employed through a company known as "NetworkHair," and an independent contractor through a company known as "Emya" at the time of the alleged incident.  Self-employed wages are akin to lost profits, which also must be proved with reasonable certainty. *Melton v. United States*, 488 F. Supp. 1066, FN 35 (where lost profits are proximately caused by the defendant's negligence, they may be recovered "provided these damages are proven to a reasonable certainty").

Green has provided no evidence to support her claim for past lost wages from Emya, despite being asked repeatedly to quantify this claim in discovery.  Regarding her lost wages from her independent company NetworkHair, Green acknowledged she was unable to prove these with any reasonable certainty.  Indeed, Green has been unable to provide a specific number for this claim--let alone offer evidence to prove it.  Finally, Green concedes she has no evidence of any medical provider actually establishing a causal link between the alleged incident and any "lost capacity to work."  Not only can Green not establish the causal link, her own statement about the nature of that work solidifies that these future lost wages/profits cannot be established with reasonable certainty.  Green simply has no evidence to support the claim that she lost wages as a result of the alleged incident, and she has no evidence to support the claim that she has

10

suffered a loss of earning capacity as a result of the alleged incident.  Under Rule 56, Costco is entitled to judgment as a matter of law on this issue.

## CONCLUSION

Even *pro se* litigants are required to adhere to the Federal Rules of Civil Procedure. Green has not timely disclosed any expert, has not properly disclosed any medical expert, and has not even *attempted* to disclose any liability expert, timely or otherwise.  Green's claim against Costco requires her to introduce evidence Costco's alleged breach of safety guidelines caused the incident.  Such alleged breaches constitute a "safety" issue that requires expert testimony to establish the standard of care.  Green has not disclosed such an expert, and as she is therefore barred from introducing this testimony at trial.  Further, Green claims she suffered injuries as a result of the accident, including post-concussive/mild-traumatic brain issues, but has failed to timely or properly disclose any expert to establish general or specific causation as to her alleged injuries.  Finally, Green has conceded she is unable to quantify or prove her wage claims.

Under Rule 56(c)(1)(B), Green's inability to produce admissible evidence in support of her allegations is grounds for Summary Judgment.  Here, Green is plainly unable to produce admissible evidence to support her claim, and Costco is entitled to judgment as a matter of law.

WHEREFORE, Costco respectfully requests this Court grant its Motion for Summary Judgment or, in the alternative, grant its Motion in part as to Plaintiff's claimed injuries and/or Plaintiff's claim for lost wages and loss of earning capacity, and enter the attached Order.

Respectfully submitted,

COSTCO WHOLESALE CORPORATION

By: /s/ J. Matthew Haynes, Jr.
     J. Matthew Haynes, Jr.
     Washington D.C. Bar No.: 992067

McCANDLISH HOLTON, PC
1111 East Main Street, Suite 2100
P.O. Box 796
Richmond, Virginia  23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
mhaynes@lawmh.com
*Counsel for Costco Wholesale Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) and transmitted the same via First Class Mail, to the following:

Denierika F. Green
5324 4th Street NW, #2
Washington, District of Columbia 20011
Phone: (202) 321-6754
Didigreen1@gmail.com
*Plaintiff Pro Se*

/s/ J. Matthew Haynes, Jr., Esquire
J. Matthew Haynes, Jr., Esquire
Washington D.C. Bar No.: 992067
MCCANDLISH HOLTON
1111 East Main Street, Suite 2100
P.O. Box 796
Richmond, VA  23218
(804) 775-3100 Telephone
(804) 775-3800 Facsimile
mhaynes@lawmh.com
*Counsel for Costco Wholesale Corporation*

1          IN THE UNITED STATES DISTRICT COURT FOR THE

2                    DISTRICT OF COLUMBIA

3    ------------------------------------x

4    DENIERIKA F. GREEN,                  :

5                    Plaintiff,    :   Case No.:

6       v.                          :   1:21-cv-02061-

7    COSTCO WHOLESALE CORPORATION,    :   APM

8                    Defendant.     :

9    ------------------------------------x

10

11       Videotaped Deposition of DENIERIKA F. GREEN

12              McLean, Virginia 22102

13                  June 6, 2022

14                  12:00 p.m.

15

16

17

18

19

20   Job No.: 450745

21   Pages: 1 - 97

22   Transcribed by: John King



Transcript of Denierika F. Green
Conducted on June 6, 2022                                    2

1     Videotaped Deposition of Denierika F. Green, held at:

2

3              Planet Depos

4              8270 Greensboro Drive

5              Suite 110

6              McLean, Virginia 22102

7              (888) 433-3767

8

9

10

11

12        Pursuant to agreement, before Diamante

13    Parrish, Notary Public in and for the Commonwealth

14    of Virginia.

15

16

17

18

19

20

21

22

```
 1                A P P E A R A N C E S
 2       ON BEHALF OF THE PLAINTIFF, DENIERIKA F.
 3   GREEN:
 4           DENIERIKA F. GREEN, PRO SE
 5           5324 4th Street Northwest
 6           Apartment 2
 7           Washington, District of Columbia 20011
 8           (202) 321-6754
 9
10       ON BEHALF OF THE DEFENDANT, COSTCO WHOLESALE
11   CORPORATION:
12           J. MATTHEW HAYNES, ESQUIRE
13           MCCANDISH HOLTON
14           1111 East Main Street
15           Suite 2100
16           Richmond, Virginia 23219
17           (804) 775-3100
18
19   ALSO PRESENT:
20           Austin Costello, Videographer
21
22
```

1                    C O N T E N T S

2   EXAMINATION OF DENIERIKA F. GREEN              PAGE

3       By Mr. Haynes                             6

4

5

6                    E X H I B I T S

7                       (None)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Transcript of Denierika F. Green
Conducted on June 6, 2022                                    5

```
1              VIDEO TECH:  Here begins the videotaped
2    deposition of Denierika F. Green in the matter of
3    Green -v- Costco Wholesale Corporation in the
4    United States District Court in the District of
5    Columbia.  Case number 1:21-cv-02061-APM.
6              Today's date is June 6, 2022.  The time
7    on the video monitor is 12:01 p.m.  The
8    videographer today is Austin Costello representing
9    Planet Depos.  This video deposition is taking
10   place at 8270 Greensboro Drive, McLean, Virginia
11   22102.
12             Would counsel please identify
13   themselves and state who they represent?
14             MR. HAYNES:  Ms. Green, you go first.
15             MS. GREEN:  Denierika Green, pro se,
16   representing myself.
17             MS. GREEN:  Matthew Haynes representing
18   Costco Wholesale Corporation.
19             VIDEO TECH:  The court reporter today
20   is Diamante Parrish representing Planet Depos.
21   Would the reporter please swear in the witness and
22   then we may proceed?
```

Transcript of Denierika F. Green
Conducted on June 6, 2022                              49

1          A      I am retired.

2          Q      Retired.  Okay.  You retired early.

3          A      Yes, I did.  I had to.

4          Q      Are you claiming lost income due to the

5    events on January 8, 2019?

6          A      I am claiming lost capacity to work.

7          Q      Okay.  And are you claiming that you

8    cannot work anymore as a result of January 8,

9    2019?

10         A      As of right now, I cannot.

11         Q      Okay.  What medical doctor has

12   instructed you that you are unable to work as a

13   result of anything that occurred on January 8,

14   2019?

15         A      Did you say instructed me not to work?

16         Q      Yes.

17         A      The instructions as of my documents, I

18   was instructed to go through several therapies in

19   order to get back to work and I am still in those

20   therapies.

21         Q      Right, I understand.  But my question

22   is a little more direct.  What medical doctor has

Transcript of Denierika F. Green
Conducted on June 6, 2022                                    50

1    told you that you are currently -- or since

2    January 8, 2019, unable to work as a result of the

3    incident that occurred at Costco?

4         A    They are waiting on me to complete my

5    therapy.  They have not stated that.

6         Q    Okay.  All right.  So as we sit here

7    today, are you claiming any past lost income as a

8    result of the January 2019 incident?

9         A    I don't understand what you mean when

10   you say, past.

11        Q    In other words, are you claiming that

12   you missed out on any specific amount of money

13   that would have been earned by you from January 8,

14   2019, until today?

15        A    To honestly answer that question,

16   because of COVID, it would just be 2019.  Because

17   cosmetology was shut down after that as a result

18   of the virus in April of 2020.

19        Q    Okay.  Have you been able -- have you

20   calculated a dollar amount for the 2019 income

21   year for the income you claim you lost?

22        A    No, I have not.  Because it was at the

1    beginning of the year, so I can't tell you who

2    would have -- or how many times you would call me

3    for a haircut or who would or what gigs, weddings,

4    events, bridal showers.  I cannot give you who

5    would've called me during that time.

6          Q    All right.  Let me ask you this:  When

7    we go to trial at the courthouse, I think you've

8    been there, right?

9          A    Where.

10         Q    The courthouse where this case is

11   pending.

12         A    Once or twice.

13         Q    Right.  So we are going to have a trial

14   at some point.  When we go to trial, and we

15   have -- you have spoken to the judge in the case

16   on the phone and these conferences and different

17   things we have been having?

18         A    Yes.

19         Q    Okay.  When we go to trial, do you

20   intend or do you have some calculated figure for

21   lost income that you intend to ask the court to

22   award you?

```
 1        A      Not at this time.
 2        Q      Okay.
 3               MR. HAYNES:  Can we take a quick break?
 4               MS. GREEN:  I need to stand up anyway.
 5               MR. HAYNES:  They have a --
 6               VIDEO TECH:  Hold on.  The time on the
 7      video monitor is 12:53 and we're going off the
 8      record.
 9               (Whereupon, there was a recess in the
10      proceedings.)
11               VIDEO TECH:  We're back on the record,
12      the time on the video monitor is 12:56.
13      BY MR. HAYNES:
14        Q      Ms. Green, I have a couple of questions
15      to ask you just to follow up on some blanks that I
16      left out.  Have you ever, at any time before
17      January 8, 2019, been a plaintiff in a civil
18      lawsuit?
19        A      No.
20        Q      Have you ever been a claimant in a
21      Workers' Compensation claim at any time?
22        A      Workers' Compensation?  No.
```

1        CERTIFICATE OF REPORTER - NOTARY PUBLIC

2             I, DIAMANTE PARRISH, the officer before

3    whom the foregoing deposition was taken, do hereby

4    certify that the foregoing transcript is a true

5    and correct record of the testimony given; that

6    said testimony was taken by me and thereafter

7    reduced to typewriting under my direction; that

8    reading and signing was not requested; and that I

9    am neither counsel for, related to, nor employed

10   by any of the parties to this case and have no

11   interest, financial or otherwise, in its outcome.

12             IN WITNESS WHEREOF, I have hereunto set

13   my hand and affixed my notarial seal this 6th day

14   of June, 2022.

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER
2          I, John King, do hereby certify that the
3     foregoing transcript is a true and correct record
4     of the recorded proceedings; that said proceedings
5     were transcribed to the best of my ability from
6     the audio recording and supporting information;
7     and that I am neither counsel for, related to, nor
8     employed by any of the parties to this case and
9     have no interest, financial or otherwise, in its
10    outcome.
11
12
13
14
       John King
15    _____
16    John King
17
18
19
20
21
22
```